UNITED STATES of America,
Plaintiff–Appellant,

v.

Michael D. LINICK;  Henry G. Bailey,
III, Defendants–Appellees.

No. 98–10502.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1999.

Decided Nov. 9, 1999.

Howard S. Scher, United States Department of Justice, Washington, D.C., for the plaintiff-appellant.

Michael D. Linick, Pro per, Eugene, Oregon, for the defendant-appellee.

Before: PREGERSON and WIGGINS, Circuit Judges, and CARTER, District Judge.[1]

WIGGINS, Circuit Judge:

The United States appeals the district court's dismissal of an information filed against defendants Michael D. Linick and Henry G. Bailey, III (collectively "Defendants"). The information charged Defendants with the use of the Apache–Sitgreaves National Forest without a permit in violation of 16 U.S.C. § 551 and related Forest Service regulations. In dismissing

the information, the district court ruled that the language of 36 C.F.R. § 251.56(a)(2)(vii) was overbroad, which rendered unconstitutional the Forest Service's regulatory scheme for the noncommercial group use of National Forest System land. We have jurisdiction pursuant to 28 U.S.C. § 1291. We AFFIRM in part and REVERSE in part.

I.

Defendants are members of the Rainbow Family, a loosely structured group of people who gather at least once a year on National Forest System land to pray for peace and discuss political and environmental issues. In June 1998, the Rainbow Family held a gathering in the Apache–Sitgreaves National Forest without first obtaining a noncommercial group use permit for the event. When Defendants participated in the gathering, the Forest Service cited them for violating 16 U.S.C. § 551 and 36 C.F.R. § 261.10(k)—namely unauthorized special use of National Forest System land.[2]

Defendants moved the district court to dismiss the information, arguing that the Forest Service's regulatory scheme for the noncommercial group use of National Forest System land was unconstitutional on its face. Among other things, they argued that 36 C.F.R. § 251.56(a)(2)(vii), which allows the Forest Service to attach any terms and conditions that protect the public interest to any special-use permit granted by the Forest System, contained overbroad language that would allow the Forest Service to restrict the use of public land by applicants who seek to express a disfavored view.[3] The district court grant-

---

1. The Honorable David O. Carter, United States District Court Judge for the Central District of California, sitting by designation.

2. 36 C.F.R. § 261.10(k) prohibits the use or occupation of "National Forest System land or facilities without special use authorization when such authorization is required." 16 U.S.C. § 551 imposes a fine and/or imprison-

ment upon parties who violate Forest Service rules and regulations.

3. 36 C.F.R. § 251.56(a)(2)(vii) is part of the Forest Service's regulatory scheme governing the "special use" of National Forest System land. Subject to certain exceptions not relevant here, any person wishing to engage in a special use of National Forest System land

ed Defendants' motion to dismiss, ruling that 36 C.F.R. § 251.56(a)(2)(vii) gave Forest Service officers impermissibly broad discretion in violation of the First Amendment.

It is undisputed that the Rainbow Family's June 1998 gathering was a noncommercial group use of National Forest System land within the meaning of 36 C.F.R. § 251.51 and that such use was therefore subject to the regulatory scheme.[4] Today we decide the constitutionality of that scheme.

## II.

■ We review de novo the district court's grant of Defendants' motion to dismiss because the dismissal involved only questions of law. *See Roulette v. City of Seattle,* 97 F.3d 300, 302 (9th Cir.1996). The overbreadth doctrine seeks to prevent the government from coercing citizens into self-censorship by allowing facial challenges to licensing schemes that grant unbridled discretion to public officials even if the challengers would otherwise lack standing to raise the claim. *See City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755–59, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). In the prior restraint context, the Supreme Court has recognized that "the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint," can threaten First Amendment values even if such discretion and power are never actually abused. *See id.* at 757, 108 S.Ct. 2138. For this reason, a party subject to a regulatory scheme may challenge the scheme on its face, without first applying for a permit, whenever the scheme allegedly vests authorities with substantial power to allow or deny expressive activity. *See id.*

at 755–59, 108 S.Ct. 2138 (citing *Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), and *Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)); *Nunez v. City of San Diego,* 114 F.3d 935, 949 (9th Cir.1997).

In *Lakewood,* the Supreme Court allowed a facial challenge to the constitutionality of a city ordinance which vested the mayor with the authority to grant permits to place newsracks on public property. That ordinance allowed the mayor to attach to the permit any "terms and conditions deemed necessary and reasonable." *Id.* at 754, 108 S.Ct. 2138. In finding the ordinance to be overbroad, the Supreme Court suggested that the "terms and conditions" provision of the ordinance vested the mayor with impermissible discretion to deny expressive activity. *See id.* at 769, 108 S.Ct. 2138 ("[N]othing in the law as written requires the mayor to do more than make the statement 'it is not in the public interest' when denying a permit application.").

36 C.F.R. § 251.56(a)(2)(vii) bears striking similarities to the "terms and conditions" provision of the *Lakewood* ordinance. It too contains language that effectively permits a governmental authority—in this case the Forest Service—to attach any "terms and conditions" to a permit. Specifically, 36 C.F.R. § 251.56(a)(2)(vii) states that a special use permit may contain such "terms and conditions as the authorized officer deems necessary to ... otherwise protect the public interest." On its face, this language vests the Forest Service with the power to restrict the use of public land for an unlimited number of reasons so

---

must first obtain a permit. *See* 36 C.F.R. §§ 251.50(a) & 261.10(k).

36 C.F.R. § 251.56(a)(2) states that each "special use authorization" may contain such "terms and conditions as the authorized officer deems necessary to ... (vii) otherwise protect the public interest."

**4.** One type of special use is "noncommercial group use," which 36 C.F.R. § 251.51 defines as "any activity conducted on National Forest System lands involving a group of 75 or more people (a) for which no fee is charged or (b) where the primary purpose is not the sale of a good or service."

long as it can claim that the restriction serves the public's interest.

■ Although 36 C.F.R. § 251.54(h)(1) prohibits the Forest Service from summarily denying a permit on the basis of the public interest, the Forest Service's broad discretion to attach terms and conditions to a permit can be abused in a manner that could limit the use of public land by parties who hold political views that are disfavored by the Forest Service. In the same way that the *Lakewood* mayor could have attached conditions to newsrack permits so as to relegate certain racks to effectively inaccessible locations, *see Lakewood*, 486 U.S. at 769, 108 S.Ct. 2138, the Forest Service can invoke its authority under 36 C.F.R. § 251.56(a)(2)(vii) to impose such onerous terms on the use of public land by certain groups so as to render impractical their use of the land for expressive activities. We thus find that 36 C.F.R. § 251.56(a)(2)(vii) vests the Forest Service with unbridled discretion to deny expressive activity and is therefore overbroad on its face.

Despite the government's assertion to the contrary, *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), is inapposite to this case. The discretion granted to city officials in *Ward* was of a far lower magnitude than the mayor's discretion in *Lakewood* and the Forest Service's discretion here. In *Ward*, 491 U.S. at 794, 109 S.Ct. 2746, the Supreme Court upheld a municipal guideline that required band-shell performers in New York City's Central Park to use sound-amplification equipment and sound technicians provided by the city. To the extent that the city had discretion in *Ward*, such discretion took the limited form of the city sound technician's ability to vary sound quality and sound volume to avoid excessive noise. *See id.* at 794–95, 109 S.Ct. 2746. Such discretion is of a different order than the power to attach any term or condition to a permit so long as such term or condition ostensibly serves the public interest. Unlike 36 C.F.R.

§ 251.56(a)(2)(vii), the *Ward* ordinance could not be used to attach conditions to the use of a public forum in advance of actual expression. *See id.* at 795 n. 5, 109 S.Ct. 2746.

### III.

■ The fact that 36 C.F.R. § 251.56(a)(2)(vii) is facially invalid, however, does not end our inquiry. In evaluating the constitutionality of a regulatory scheme, we should "presume any narrowing construction ... to which the law is 'fairly susceptible.'" *Lakewood*, 486 U.S. at 770 n. 11, 108 S.Ct. 2138 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)). In particular, administrative interpretation of a regulation is "highly relevant to our analysis." *Ward*, 491 U.S. at 793–94, 109 S.Ct. 2746. When an administrative agency offers a narrowing construction to a facially overbroad regulation, the narrowing construction can render constitutional an otherwise unconstitutional regulation because the construction can constrain the ability of officials to enforce the regulation in an illegitimate manner. *See Ward*, 491 U.S. at 795, 109 S.Ct. 2746.

In the instant case, the Forest Service recently promulgated an interpretive rule to clarify the scope of 36 C.F.R. § 251.56. *See* 64 Fed.Reg. 48,959 (1999). The interpretive rule states in relevant part:

> The imposition of terms and conditions in noncommercial group use permits is limited to those designed to further the three public interests identified by the Forest Service in promulgating the noncommercial group use rule, i.e., the need to address concerns of public health and safety, to minimize damage to National Forest System resources, and to allocate space among actual or potential uses and activities.

*Id.* This rule works as a self-imposed limit on the Forest Service's previously unbridled discretion in attaching terms and conditions to permits.

■ Whether or not this interpretative rule preserves the constitutionality of the Forest Service's noncommercial-group-use regulatory scheme, however, depends on whether the scheme, as limited by the narrowing construction, satisfies the traditional three-part test used to analyze the constitutionality of regulations governing the use of public forums.[5] Under this test, the government may regulate the time, place, and manner of expressive activity that occurs in a public forum so long as the regulatory scheme is (1) content-neutral, (2) narrowly tailored to serve a significant government interest, and (3) leaves open "ample alternatives for communication." *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129–130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); *see also One World One Family Now v. City & County of Honolulu,* 76 F.3d 1009, 1012 (9th Cir. 1996) (citing *Ward,* 491 U.S. at 791, 109 S.Ct. 2746).

■ The Forest System's interpretative rule preserves the constitutionality of the regulatory scheme because the scheme now satisfies the three-part test for time-place-manner regulation. First, the rule limits the permissible range of terms and conditions to only those that pertain to health, safety, the environment, land-use management, and the minimization of damage to National Forest System resources. *See* 64 Fed.Reg. 48,959 (1999). These concerns are content-neutral,[6] and therefore the scheme satisfies the first prong of the test. *See, e.g., United States v. Kistner,* 68 F.3d 218, 221 (8th Cir.1995) (finding public health and safety and the minimization of

damage to park resources to be content-neutral reasons for regulation); *Wheeler v. Commissioner of Highways,* 822 F.2d 586, 595 (6th Cir.1987) (finding the preservation of natural beauty to be a content-neutral interest). Second, when read in light of the interpretive rule, 36 C.F.R. § 251.56(a)(2)(vii) is now narrowly tailored to serve specified government interests and no other purposes. *See United States v. Johnson,* 159 F.3d 892, 895–96 (4th Cir. 1998) (finding that 36 C.F.R. § 251.56(a)(2)(vii), when construed in light of the three purposes for which the relevant regulations were enacted, is narrowly tailored to serve specified government interests). The second prong is thus satisfied. Third, even if 36 C.F.R. § 251.56(a)(2)(vii) could still hinder expressive activity on National Forest System land, the regulatory scheme as a whole leaves open ample alternatives for communication. 36 C.F.R. § 251.56(a)(2)(vii) does not affect groups with fewer than 75 people. *See* 36 C.F.R. § 251.51. If a permit is not granted, the Forest Service is required to offer an alternative time, place, or manner if one is available. *See* 36 C.F.R. § 251.54(h)(2); *Black v. Arthur,* 18 F.Supp.2d 1127, 1134 (D.Or.1998). Defendants also have not shown why it is imperative for Rainbow Family to gather in a national forest, as opposed to some other location, to pray and to discuss their views. The scheme thus satisfies the third prong of the test. Accordingly, we reverse the district court's ruling and find the regulatory scheme to be constitutional. The interpretive rule saves the scheme.

5. For the purposes of this appeal, the government has expressly assumed that the National Forest System is a public forum. Defendants do not dispute this characterization. We do not decide this issue here, but we note that at least one other circuit has suggested that National Forest System land is a public forum susceptible to time-place-and-manner restrictions. *See United States v. Johnson,* 159 F.3d 892, 895 (4th Cir.1998) ("[T]he parties agree that when expressive conduct occurs on public grounds, *like a national forest,* the Government can impose time, place, and manner

restrictions.") (emphasis added) (internal quotes omitted).

6. A speech restriction is content-neutral if it is "justified without reference to the content of the regulated speech." *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward,* 491 U.S. at 791, 109 S.Ct. 2746.

### IV.

■ Relying on a recently promulgated interpretive rule to construe 36 C.F.R. § 251.56(a)(2)(vii) as constitutionally valid, however, raises a due process problem for Defendants. Although the Forest Service filed the information against Defendants in July 1998, the Forest Service did not promulgate the interpretative rule until September 1999. *See* 64 Fed.Reg. 48,959 (1999). The regulation thus gave Defendants inadequate notice about the danger of being successfully prosecuted under this newly and narrowly construed regulatory scheme. *See Osborne v. Ohio,* 495 U.S. 103, 115, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). Under such circumstances, to permit the government to proceed with its prosecution of Defendants would create a chilling effect on challenges to laws that potentially encroach upon the freedom of speech. *See Shuttlesworth,* 394 U.S. at 151, 89 S.Ct. 935; *see also Massachusetts v. Oakes,* 491 U.S. 576, 586, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) (Scalia, J., concurring). We therefore affirm the dismissal of the information.

AFFIRMED in part and REVERSED in part.