217 F.3d 1050 (9th Cir. 2000)
 SEUNG CHUN LIM; FLUFFY, INC., a California Corporation; 5436 SANTA MONICA BOULEVARD, INC., a California Corporation, Plaintiffs-Appellants,
v.
CITY OF LONG BEACH, a municipal corporation, REHEARING AND Defendant-Appellee.
 No. 98-55915
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted February 8, 2000--Pasadena, California
Filed June 27, 2000
Amended August 23, 2000
 
 [Copyrighted Material Omitted]
 Roger Jon Diamond, Santa Monica, California, for the plaintiffs-appellants.
 Daniel S. Murphy, City of Long Beach, Long Beach, California, for the defendant-appellee.
 John Weston (argued) and G. Randall Garrou, Weston, Garrou & DeWitt, Los Angeles, California, for amici curiae Tollis, Inc. and Eyeful, Inc.
 Deborah J. Fox, Fox & Sohagi, Los Angeles, California, for amici 108 California Cities and California State Association of Counties.
 Appeal from the United States District Court for the Central District of California; Richard A. Paez, District Judge, Presiding. D.C. No. CV-96-02742-RAP
 Before: Robert Boochever, Michael Daly Hawkins, and Sidney R. Thomas, Circuit Judges.
 HAWKINS, Circuit Judge:
 
 
 1
 The owners of three adult book and video stores and an adult mini-theater (collectively "Plaintiffs") sued the City ofLong Beach ("Long Beach") challenging the constitutionality of a Long Beach zoning ordinance restricting the locations in which adult businesses can operate. The district court found that the ordinance did not violate the Plaintiffs' rights under the First Amendment or the Equal Protection Clause. We remand to allow Plaintiffs to develop and present evidence concerning the availability of alternative commercial locations in the Long Beach real-estate market.
 
 BACKGROUND
 
 2
 In 1994, Long Beach amended its existing adult entertainment zoning ordinance[1] by modifying the locational restrictions on adult businesses. The new ordinance provided that an adult entertainment business[2] may not be located within (1) 300 feet of a residential zoning district or a residential planned development district; (2) 1,000 feet of any public or private school; (3) 600 feet of any city park; (4) 500 feet of a church; or (5) 1,000 feet of any other adult entertainment business. See Long Beach Municipal Code ("LBMC") S 21.45.110(A)(1). The ordinance further provided that an adult entertainment business may not be located in certain specific areas of Long Beach. See LBMC S 21.45.110(A) (1)(f). The ordinance established an eighteen-month amortization period for existing adult businesses, LBMCS 21.45.300, but otherwise equally treated existing and new adult businesses.
 
 
 3
 Plaintiff Seung Chun Lim owns two adult businesses in Long Beach, both of which are in violation of the ordinance because they are within 300 feet of residential districts. One of his businesses is also located within an area restricted under LBMC S 21.45.110(A)(1)(f). Plaintiff Fluffy, Inc. owns one adult bookstore in Long Beach which is within 300 feet of a residential district and within a restricted area. Plaintiff 5436 Santa Monica Boulevard owns one adult business (a combination mini theater and bookstore) which is within 300 feet of a residential district.
 
 
 4
 Plaintiffs filed this suit seeking a permanent injunction against enforcement of the ordinance, claiming that the ordinance violates their First Amendment rights as well as the Equal Protection Clause.
 
 
 5
 The district court found the ordinance constitutional. Where an ordinance does not ban adult businesses outright, but limits the areas of a city in which they may operate, it is considered a content-neutral time, place, and manner restriction. See City of Renton v. Playtime Theaters, 475 U.S. 41, 46 (1986). The ordinance is constitutional so long as it is designed to serve substantial governmental interests and allows for alternative avenues of communication. See id. The parties do not dispute that curbing the secondary effects of adult businesses is a substantial governmental interest. See City of Erie v. Pap's A.M., 529 U.S.__, 120 S.Ct. 1382, 146 L.Ed.2d. 265 (2000)(statute is content neutral where government's interest is to curb secondary effects of adult businesses). Therefore, the only question presented to the district court, and in this appeal, is whether Long Beach's ordinance unreasonably limits alternative avenues of communication.
 
 
 6
 During discovery, Long Beach identified 115 sites that it contended were available for use by adult businesses. It provided specific and detailed information about each site. Long Beach also noted that these 115 sites did not represent every site that was potentially available to adult businesses; rather, the 115 locations were an attempt by Long Beach to show the existence of a sufficient number of alternative sites. See Lim, 12 F. Supp. 2d at 1062.
 
 
 7
 The district court found that 27 or 28 adult businesses could coexist under the ordinance and concluded that the ordinance allowed for alternative avenues of communication. See id. at 1065-67. The district court also concluded that the ordinance did not violate the Equal Protection Clause because Long Beach had a rational basis for treating adult businesses differently from other businesses. See id. at 1067-68.
 
 STANDARD OF REVIEW
 
 8
 The district court's findings of fact are reviewed for clear error, see Vally Eng'rs, Inc. v. Electric Eng'g Co., 158 F.3d 1051, 1052 (9th Cir. 1998), while its conclusions of law are reviewed de novo, see Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp., 159 F.3d 412, 418 (9th Cir. 1998). Mixed questions of law and fact are also reviewed de novo. See United States v. City of Spokane, 918 F.2d 84, 86 (9th Cir. 1990). A mixed question of law and fact exists when there is no dispute as to the facts, the rule of law is undisputed, and the question is whether the facts satisfy the legal rule. See Pullman-Standard v. Swint, 456 U.S. 273, 289 n. 19 (1982); United States v. Lang, 149 F.3d 1044, 1046 (9th Cir. 1998).
 
 ALTERNATIVE AVENUES OF COMMUNICATION
 
 9
 As a threshold matter, we note that it is clear that the burden of proving alternative avenues of communication rests on Long Beach.[3] See J & B Entertainment, Inc. v. City of Jackson, 152 F.3d 362, 370 (5th Cir. 1998) ("[T]he government bears the burden of justifying (i.e. both the burden of production and persuasion) the challenged statute."); Phillips v. Borough of Keyport, 107 F.3d 164, 177 (3d Cir. 1997) (en banc) (burden of proving alternative avenues of communication is element for state to satisfy); see also Renton, 475 U.S. at 50 (implicitly placing burden of proof on city); Acorn Investments v. City of Seattle, 887 F.2d 219, 224 (9th Cir. 1989) (city has burden to establish substantial government interest). Traditionally and logically, this burden is placed on Long Beach because the party seeking to restrict protected speech has the burden of justifying that restriction. See, e.g., Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 71 n.20 (1983) (in context of commercial speech).[4] The issue before this court -one that is decidedly less clear -is the level of specificity about each particular site Long Beach is required to provide to sustain its burden.
 
 
 10
 A city allows for alternative avenues of communication if it offers adult businesses a "reasonable opportunity to open and operate . . . within the city." Renton , 475 U.S. at 54. We have applied a two-step approach to determining whether this condition is satisfied: (1) relocation sites provided to adult businesses must be considered part of an actual business real estate market for commercial enterprises generally; and (2) after excluding those sites that may not properly be considered part of the relevant real estate market, there are an adequate number of relocation sites. See Topanga Press v. City of Los Angeles, 989 F.2d 1524, 1529 (9th Cir. 1993).
 
 A. Actual Business Real Estate Market
 
 11
 In Topanga Press, we noted that "[w]e are left to the simple, yet slippery, test of reasonableness when attempting to discern whether land is or is not part of a market in which any business may compete." 989 F.2d at 1530. We then listed five considerations in making the reasonableness determination: (1) a relocation site is not part of the market if it is "unreasonable to believe that it would ever become available to any commercial enterprise;" (2) a relocation site in a manufacturing or industrial zone that is "reasonably accessible to the general public" may also be part of the market; (3) a site in a manufacturing zone that has proper infrastructure may be included in the market; (4) a site must be reasonable for some generic commercial enterprise, although not every particular enterprise, before it can be considered part of the market; and (5) a site that is commercially zoned is part of the relevant market. See id. at 1531. In addition, a site must obviously satisfy the conditions of the zoning ordinance in question. See id.
 
 
 12
 Plaintiffs argue that the district court erred in considering sites with restrictive leases banning adult entertainment establishments. Under Topanga Press, however, sites must only reasonably become available to some generic commercial enterprise, not specifically to adult businesses. See 989 F.2d at 1531-32 ("The issue is whether any site is part of an actual market for commercial enterprises generally."); cf. Woodall v. City of El Paso (Woodall III), 49 F.3d 1120, 112526 (5th Cir. 1995) (also noting that large single-use buildings, like warehouses and factories, may arguably be outside commercial real estate market). Here, these sites may be available to commercial enterprises other than adult entertainment businesses. Therefore, the district court did not err in considering this property part of the actual business real estate market.
 
 
 13
 Plaintiffs also argue that the district court improperly considered certain currently occupied property as part of the actual business real estate market. Topanga Press stated that the requirement that property potentially become available (the first factor, above) "connotes genuine possibility." 989 F.2d at 1531. Thus, for example, property subject to a longterm lease might not meet the Topanga Press test. Id. Plaintiffs contend that under Topanga Press, Long Beach should have been required to prove that the currently occupied property would reasonably become available to any commercial enterprise. Long Beach came forward with a list of 115 sites it contended were potentially available. According to the district court opinion, 12 F. Supp. 2d at 1056-62, Long Beach provided pertinent, specific and detailed information about each site. Based on this information, the district court found that Long Beach made a good faith and reasonable attempt to prove that it was providing the Plaintiffs with a reasonable opportunity to open and operate.
 
 
 14
 A city cannot merely point to a random assortment of properties and simply assert that they are reasonably available to adult businesses. The city's duty to demonstrate the availability of properties is defined, at a bare minimum, by reasonableness and good faith. If a plaintiff can show that a city's attempt is not in fact in good faith or reasonable, by, for example, showing that a representative sample of properties are on their face unavailable, then the city will be required to put forth more detailed evidence. But where a city has provided a good faith and reasonable list of potentially available properties, it is for the Plaintiffs to show that, in fact, certain sites would not reasonably become available. See also Hickerson v. New York City, 146 F.3d 99, 107 (2d Cir. 1998) ("[W]e are aware of no federal case . . . that requires municipalities to identify the exact locations to which adult businesses may relocate, as opposed to identifying the general areas that remainavailable and proving that such areas contain enough potential relocation sites that are `physically and legally available' to accommodate the adult establishments."). There is no reason to conclude that Long Beach acted in bad faith or unreasonably in identifying potentially available properties. The burden of showing that particular sites would not reasonably become available therefore rests with the Plaintiffs.
 
 
 15
 The district court denied Plaintiffs' request to submit additional evidence to satisfy their burden. See Lim, 12 F. Supp. 2d at 1065 n.6. The district court held that such evidence was irrelevant under Renton and Topanga Press. This holding was error in light of our conclusion today that, under Topanga Press, property must have a genuine possibility of coming available for commercial use to be considered part of the relevant commercial real estate market. We therefore remand to permit Plaintiffs to develop and present evidence that Long Beach's proffered properties would not reasonably become available because, for example, they were encumbered by long-term leases.
 
 B. Sufficiency of Alternative Sites
 
 16
 Once the relevant market has been properly defined in light of any additional evidence presented by Plaintiffs on remand, the district court will have to reexamine whether the market contains a sufficient number of potential relocation sites for Plaintiffs' adult businesses. Because it is unclear how many sites will be part of the relevant market, we cannot determine whether the district court correctly concluded that a sufficient number of sites exist to allow Plaintiffs a reasonable opportunity to open and operate.
 
 EQUAL PROTECTION
 
 17
 Plaintiffs also claim that Long Beach violated their equal protection rights by (1) forcing existing adult businesses to relocate under the ordinance while allowing non-adult businesses to remain in place even when in violation of other city zoning ordinances; and (2) forcing adult businesses to comply with new parking regulations while non-adult businesses are exempt. Plaintiffs argue that Long Beach's actions single out adult businesses for unfavorable treatment in violation of the Equal Protection Clause of the Fourteenth Amendment.[5]
 
 
 18
 It is unclear whether the Plaintiffs have even established that Long Beach only forced non-conforming adult businesses to relocate, and only forced adult businesses to comply with new parking regulations. Even assuming Plaintiffs adequately proved that Long Beach discriminated against adult businesses, however, Plaintiffs' arguments fail.
 
 
 19
 Where no suspect classification is under scrutiny, the Equal Protection Clause requires that a government's action be rationally related to a permissible government objective. See, e.g., Massachusetts Board of Retirement v. Maine, 427 U.S. 307 (1976). This test has traditionally proved deferential toward the governmental entity. See, e.g., Railway Express Agency v. New York, 336 U.S. 106 (1949).
 
 
 20
 Here, there is evidence that Long Beach had a rational reason for enforcing its adult business ordinance and not enforcing other zoning ordinances. Long Beach enforces its adult business ordinance because of its interest in curbing the secondaryeffects of adult businesses. Long Beach does not have a similar interest in enforcing its other ordinances. As such, the district court did not err in denying Plaintiffs' equal protection claim.
 
 
 21
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED. Costs on appeal to Plaintiffs.
 
 
 
 Notes:
 
 
 [1]
 Long Beach began zoning adult businesses in 1977. See Lim v. City of Long Beach, 12 F. Supp. 2d 1050, 1053-54 (C.D. Cal. 1998).
 
 
 [2]
 The ordinance also defines adult entertainment businesses. See Lim, 12 F. Supp. 2d at 1054. There is no question here that the Plaintiffs qualify as adult businesses under the ordinance.
 
 
 [3]
 The district court erred to the extent that it placed this burden on the Plaintiffs. See Lim, 12 F. Supp. 2d 1064-65.
 
 
 [4]
 In general, where a plaintiff claims suppression of speech under the First Amendment, the plaintiff bears the initial burden of proving that speech was restricted by the governmental action in question. See, e.g., Los Angeles Police Department v. United Reporting Publishing Co., 120 S. Ct. 483, 488-89 (1999). The burden then shifts to the defendant governmental entity to prove that the restriction in question is constitutional. See, e.g., Greater New Orleans Broadcasting Ass'n v. United States, 119 S. Ct. 1923, 1930 (1999).
 
 
 [5]
 Plaintiffs' argument is different from the argument raised in Young v. American Mini-Theatres, Inc., 427 U.S. 50 (1976), where the plaintiffs argued that their equal protection rights were violated because the ordinances in question treated adult businesses differently from other businesses. Here, Plaintiffs claim that Long Beach violates their equal protection rights by enforcing the 1994 ordinance against adult businesses while failing to enforce other zoning ordinances that affect non-adult businesses.