**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TOLLIS INC.; 1560 N. MAGNOLIA
AVENUE, LLC,
      *Plaintiffs-Appellants,*

v.

COUNTY OF SAN DIEGO,
      *Defendant-Appellee.*

No. 05-56300

D.C. No.
CV-02-02023-
LAB/RBB

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted July 11, 2007
Submission Withdrawn August 8, 2007
Resubmitted October 2, 2007
Pasadena, California

Filed October 10, 2007

Before: Barry G. Silverman, William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Silverman

**COUNSEL**

A. Dale Manicom, San Diego, California; Clyde DeWitt, Weston, Garrou, DeWitt, & Walters, Los Angeles, California; Bradley J. Shafer, Shafer & Associates, Lansing, Michigan, for the plaintiffs-appellants.

Thomas D. Bunton and John J. Sansone, County Counsel, San Diego, California, for the defendant-appellee.

G. Randall Garrou, Weston, Garrou & DeWitt, Los Angeles, California, for the amicus.

## OPINION

SILVERMAN, Circuit Judge:

In June 2002, the San Diego County Board of Supervisors adopted a comprehensive zoning ordinance to govern the operation of adult entertainment businesses within its jurisdiction, which covers the unincorporated portions of the county. The ordinance restricts the hours in which such businesses can operate, requires the removal of doors on peep show booths, and mandates that the businesses disperse to industrial areas of the county. The County's purported rationale for the ordinance was to combat negative secondary effects — crime, disorderly conduct, blight, noise, traffic, property value depreciation, and unsanitary behavior — that concentrate in and around adult businesses.

The two adult entertainment establishments presently operating in the unincorporated portions of San Diego County filed suit. In this appeal, the operators of one of the establishments, Déjà Vu, appeal the district court's decision to uphold the ordinance's dispersal requirements. They also appeal the district court's dismissal of their state law claim under California Government Code § 65860, which requires zoning laws to conform to the municipality's general plan, and the district court's decision to sever a provision of the ordinance setting forth the amount of time in which the County had to approve an operating permit for adult establishments.

We hold that the district court's manner of severance was in error and reverse on that ground. We affirm in all other respects.[1]

---

[1]All pending requests for judicial notice are unopposed, and are hereby granted. Municipal ordinances are proper subjects for judicial notice. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006).

## I.  Background

In June 2002, citing to concerns about the surrounding neighborhood, the San Diego County Board of Supervisors adopted a comprehensive set of regulations and licensing procedures governing adult entertainment establishments within its jurisdiction. The ordinances took effect the following month.

1560 N. Magnolia Ave., LLC, using property leased from Tollis, Inc., operates an adult bookstore in the Bostonia neighborhood of the county under the name "Déjà Vu." These businesses (hereinafter, "Déjà Vu") initiated federal and state constitutional challenges against the new ordinances, seeking declaratory and injunctive relief.

The district court granted summary judgment to the County, upholding the ordinance's requirement that adult establishments locate only in industrial zones.[2] *See Fantasyland Video, Inc. v. County of San Diego*, 373 F. Supp. 2d 1094, 1130-43 (S.D. Cal. 2005). The court also dismissed Déjà Vu's state law claim under California Government Code § 65860, regarding conformance to the County's general plan. *Id.* at 1129-30. Finally, the district court held that the County's permitting regime for adult establishments was unconstitutional because it granted the licensing body an unreasonably long period of time to consider a permit request. *Id.* at 1143-46. The court opted to sever the offending time limits from the ordinance. *Id.* at 1146-47.

This timely appeal followed.

---

[2]The other adult establishment in the unincorporated portion of San Diego County, Fantasyland Video, Inc., has appealed the district court's judgment on other grounds not relevant to the disposition of this appeal.

## II.  Jurisdiction

The district court had subject matter jurisdiction over Déjà Vu's constitutional claims under 28 U.S.C. §§ 1331, 1343(a), and over its state claim under 28 U.S.C. § 1367(a). We have jurisdiction under 28 U.S.C. § 1291.

## III.  Standard of Review

We review de novo the district court's grant of summary judgment and, viewing the evidence in a light most favorable to the non-moving party, determine whether there are any genuine issues of material fact for trial. *See Gammoh v. City of La Habra*, 395 F.3d 1114, 1122 (9th Cir. 2005).

## IV.  Discussion

### A.  Industrial Zone Restriction

The constitutionality of the challenged provision is governed by the framework announced in *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986). As recounted by *Center for Fair Public Policy v. Maricopa County*, 336 F.3d 1153 (9th Cir. 2003), this familiar inquiry proceeds in three distinct steps: First, the ordinance cannot be a complete ban on the protected expression. *Id.* at 1159. Second, the ordinance must be content-neutral or, if content-based with respect to sexual and pornographic speech, its predominate concern must be the secondary effects of such speech in the community. *Id.* at 1159, 1161. Third, the regulation must pass intermediate scrutiny. It must serve a substantial government interest, be narrowly tailored to serve that interest, and allow for reasonable alternative avenues of communication. *Id.* at 1159.

Déjà Vu raises two arguments on appeal both relating to the third step. It first contends that a concurrence by Justice Kennedy in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S.

425, 444-53 (2002), radically altered the traditional *Renton* framework by imposing an additional burden on the County to show "how speech would fare" under the new ordinance.[3] Alternatively, Déjà Vu argues that the ordinance is unconstitutional under the traditional *Renton* framework because all the potential relocation sites are located within the County's industrial zones. We address each in turn.

## 1. Justice Kennedy's *Alameda Books* Concurrence

To justify a content-based zoning ordinance that restricts sexual and pornographic speech, Justice Kennedy wrote that "a city must advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects, while leaving the quantity and accessibility of speech substantially intact." 535 U.S. at 449. By adding the last clause, Justice Kennedy said he was expressing an interest in "how speech will fare" after the ordinance is enacted. *Id.* at 450. The city must have some basis to think that its ordinance will suppress secondary effects, but not also the speech associated with those effects. *Id.* at 449-50.

**[1]** In *Alameda Books*, the disputed ordinance prohibited multiple adult businesses from operating under the same roof. Under Justice Kennedy's construct, the City of Los Angeles must have had some basis to assume three propositions: "[1] that this ordinance will cause two businesses to split rather than one to close, [2] that the quantity of speech will be substantially undiminished, and [3] that total secondary effects will be significantly reduced." 535 U.S. at 451.

The first proposition mirrors the "alternative avenues of communication" requirement under intermediate scrutiny,

---

[3]Justice Kennedy did not join the plurality opinion in *Alameda Books*. As "his concurrence is the narrowest opinion joining the judgment of the Court," it is the controlling opinion. *Ctr. for Fair Pub. Policy*, 336 F.3d at 1161.

which requires that the displaced business be given "a reasonable opportunity to open and operate." *See Renton*, 475 U.S. at 53-54. The third proposition restates the requisite "substantial governmental interest" for regulating adult establishments based on their secondary effects. *See id.* at 50.

**[2]** *But what of the second proposition?* Justice Kennedy's reference to whether the "quantity of speech will be [left] substantially undiminished" is shorthand for asking whether the ordinance will impose a significant or material inconvenience on the consumer of the speech. At the time of enactment, the city must have some reasonable basis to believe that interested patrons would, for the most part, be undeterred by the geographic dispersal of the adult establishments. *See Alameda Books*, 535 U.S. at 450 ("[I]t does not suffice to say that inconvenience will reduce demand and fewer patrons will lead to fewer secondary effects.").

**[3]** Justice Kennedy then noted that the evidentiary burden to establish these propositions was minimal. *See id.* at 451-52. He found that the City of Los Angeles had met its initial burden. It had relied on one study and "common experience" to find a correlation between adult establishments and crime, and could reasonably infer that geographic dispersal of the adult establishments would not necessarily decrease the quantity or accessibility of the speech. *Id.* at 452-53. The burden then shifted to the plaintiffs to disprove the City's assumptions. *Id.* at 453.

**[4]** We reach the same conclusion here. The County's legislative record cites to a number of sources — studies and reports from other jurisdictions, relevant judicial decisions, and public testimony — to assert a connection between the adult establishments and negative secondary effects. A municipality may rely on these types of sources. *See Ctr. for Fair Pub. Policy*, 336 F.3d at 1168. The County could then reasonably infer that isolating of adult businesses to industrial zones would have the purpose and effect of reducing crime, disor-

derly conduct, and property depreciation, as such zones are located away from residential areas and have little other commercial appeal at night. Déjà Vu's attempt to cast doubt on the County's conclusions fails as a matter of law because its expert, Daniel Linz, Ph.D., a professor in the Department of Communication's Law and Society Program at the University of California Santa Barbara, did not rebut the County's evidence with regard to noise and traffic. The evidence presented by Dr. Linz addressed only late night crime and property values. The County considered these factors, but its purported rationale for isolating adult businesses to industrial zones also included combating increased noise and traffic. Déjà Vu's failure to address these considerations is fatal under the second step of the *Renton* intermediate scrutiny analysis. *See Alameda Books, Inc.*, 535 U.S. at 438-39. With regard to noise and traffic, Déjà Vu failed as a matter of law "to cast direct doubt on [the County's] rationale . . . by demonstrating that the [County's] evidence does not support its rationale or by furnishing evidence that disputes [its] factual findings." *Id.*

**[5]** We reject Déjà Vu's contention that *Alameda Books* imposed a heightened evidentiary burden on the County to show "how speech would fare" under the ordinance. So long as there are a sufficient number of suitable relocation sites, the County could reasonably assume that, given the draw of pornographic and sexually explicit speech, willing patrons would not be measurably discouraged by the inconvenience of having to travel to an industrial zone. *See Alameda Books*, 535 U.S. at 452 (Kennedy, J., concurring in judgment); *see also World Wide Video*, 368 F.3d at 1195 (noting that Justice Kennedy's "how speech will fare" language "[c]onceptually . . . dovetails with the requirement that an ordinance must leave open adequate alternative avenues of communication"). Under this scenario, the quantity and accessibility of the speech would not be substantially diminished.

### 2. Alternative channels of communication under *Renton*

To satisfy its burden under *Renton*, the County must propose a sufficient number of potential relocation sites to allow Déjà Vu "a reasonable opportunity" to operate its business. 475 U.S. at 54. For a site to qualify, it "must be considered part of an actual business real estate market for commercial enterprises generally." *Lim v. City of Long Beach*, 217 F.3d 1050, 1054 (9th Cir. 2000). If in an industrial or manufacturing zone, the site must be "reasonably accessible to the general public," "have a proper infra-structure," and be suitable for "some generic commercial enterprise." *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1531 (9th Cir. 1993). Finally, the list must account for other relevant zoning restrictions, such as separation requirements, that might affect a site's availability. *Isbell v. City of San Diego*, 258 F.3d 1108, 1113 (9th Cir. 2001).

If the County's list is reasonable, the burden shifts to Déjà Vu to demonstrate that the proposed sites are inadequate or unlikely to ever become available. *Lim*, 217 F.3d at 1055. Once "the relevant market has been properly defined," the factfinder must determine "whether the market contains a sufficient number of potential relocation sites for [p]laintiffs' adult businesses." *Id*. at 1056.

### a. Availability of relocation sites

The County proposed 76 potentially available parcels for Déjà Vu's relocation. Déjà Vu submitted the declaration of a land use expert contesting the availability and suitability of each site. After an exhaustive survey, the district court excluded eight sites for summary judgment purposes. *Fantasyland*, 373 F. Supp. 2d at 1132-40. In its briefs and at oral argument, Déjà Vu did not contest any of the district court's

individual determinations with respect to these remaining 68 parcels.[4]

[6] Déjà Vu's argument on appeal draws on the County's restriction of adult establishments to industrial zoning districts. All adult establishments must relocate to four industrial districts: M50, M52, M54, and M58. Although presumably available for adult establishments, none of these zones allows for general commercial use. "Non-manufacturing uses are restricted to those providing essential support services to manufacturing plants and their personnel." San Diego County Zoning Ordinance § 2500; *see also* §§ 2520, 2540, 2580. According to Déjà Vu, this total exclusion from commercial zones suggests that it has not "been afforded a reasonable opportunity to relocate." *See Topanga Press*, 989 F.3d at 1521 n.5 (avoiding the question of whether "under *Renton*, a business has been afforded a reasonable opportunity to relocate if all relocation sites are within an industrial zone and no commercial zones are offered.").

[7] We disagree. Déjà Vu's position confuses two distinct questions. Whether or not an industrial zone *permits* generic commercial business within its borders rests on a legislative policy judgment. Asking whether an industrial zone *is suitable for* generic commercial activity examines the physical characteristics and infrastructure of the land within the zone. The *Topanga Press* analysis is concerned only with the latter. *See* 989 F.3d at 1531; *see also Diamond v. City of Taft*, 215 F.3d 1052, 1056 (9th Cir. 2000). In *Topanga Press*, we held that manufacturing or industrial zones may comprise part of the relevant market if they "are reasonably accessible to the general public" and "have a proper infra-structure." 989 F.3d at 1531. We did not hold that industrial sites are potentially available for relocations only so long as they may be used for commercial purposes generally. If an industrial site is reason-

---

[4]We therefore express no opinion on the district court's mode of analysis, nor on any of its conclusions.

ably accessible and has sufficient infrastructure to be "available" under *Topanga*, it remains available even if its use for other commercial purposes may be restricted by the zoning law.

**[8]** In any case, the ordinance at issue here requires that adult businesses be located within industrial zones. Any other interpretation of the zoning scheme would zone adult businesses out of the county. As Déjà Vu does not challenge any of the district court's holdings with respect to the suitability of any one of the 68 parcels for generic commercial use, its argument fails.

### b.   Sufficiency of alternative sites

The district court determined that the remaining 68 sites, on which eight to 10 adult entertainment businesses could operate simultaneously, were sufficient to allow Déjà Vu — the only affected adult entertainment business in the county — an opportunity to relocate. *Fantasyland*, 373 F. Supp. 2d at 1140-43. Déjà Vu does not challenge this holding, but argues that the district court should have relied on other secondary measurements to assess sufficiency.

**[9]** We agree that measuring whether the number of proposed sites is sufficient to meet existing demand for sexual or pornographic speech is one of several tools to assess whether a municipality has afforded an adult business a reasonable opportunity to conduct their trade. *See Young v. City of Simi Valley*, 216 F.3d 807, 822 (9th Cir. 2000). Nevertheless, we cannot identify any error in the district court's other calculations to justify reversal.

Déjà Vu contends that the percentage of available acreage theoretically available to adult businesses in unincorporated San Diego County is drastically less than the amount approved in *Renton*. *See* 475 U.S. at 53. Furthermore, it asserts that the ratio of potential adult business sites to popu-

lation in San Diego County is much lower than in *Renton* and eight Florida municipalities engaged in similar litigation. Yet, Déjà Vu offers no argument or evidence showing that these communities are comparable to unincorporated San Diego County in size, population, or demographics. Absent such a connection, its calculations are meaningless.

**[10]** It also must be borne in mind that the City of San Diego and the other incorporated municipalities in the county are not governed by this ordinance. The unincorporated portions of the county take up the substantial majority of the land area but only a small fraction of the population of the county as a whole. It may fairly be presumed that most of the commercial property in the county, including property suitable for adult businesses, is located within municipal boundaries and thus outside the territory governed by the ordinance in question. At least where we are dealing with "unincorporated" areas, it is appropriate to recognize the likely availability of other locations within the same economic market in neighboring municipalities.

## B.    Violation of County's General Plan

Déjà Vu also claims the zoning ordinance violates California Government Code § 65860, which requires that "zoning ordinances . . . be consistent with the general plan of the county." The district court granted the County's motion for summary judgment because Déjà Vu failed to raise the claim in its complaint. *Fantasyland*, 373 F. Supp. 2d at 1129.

**[11]** A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff need not detail all the supporting facts. The statement need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

On appeal, Déjà Vu refers to its allegation that "the legislative record [fails to] establish that this statute significantly advances any 'important' governmental interest." The state law claim is purportedly encompassed within this statement.

[12] Déjà Vu's argument is not persuasive. The above allegation was made in support of the following proposition:

> Defendant's Zoning Amendment violates Plaintiffs' and the public's right to freedom of speech, press and expression protected under the First and Fourteenth Amendments to the United States Constitution and Article I, § 2 of the California Constitution . . . .

There is no accompanying reference to the relevant state statute and no assertion of a conflict between the ordinance and the County's General Plan. As a result, the County did not have fair notice that Déjà Vu was asserting a claim under California Government Code § 65860. The district court's grant of summary judgment on this issue was therefore correct.

## C. District Court Severance of Unconstitutional Time Restraints

Under San Diego County Ordinance § 6930(b), any person seeking to operate, enlarge, or transfer control of an adult establishment must first obtain a permit from the County. The district court found that the County's permitting regime was unconstitutional because it granted the licensing body an unreasonably long period of time — 130 or 140 days depending on the calculation method — to consider a permit request. *Fantasyland*, 373 F. Supp. 2d at 1143-46. The court then severed the offending time limits from the ordinance. *Id*. at 1146-47. Déjà Vu now challenges the district court's manner of severance.

[13] We hold that the district court's manner of severance was erroneous. Once the offending provision is removed, the

text of the ordinance contains no time limits at all. A licensing requirement for protected expression is patently unconstitutional if it imposes no time limits on the licensing body. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 228 (1990) ("[T]he licensor must make the decision whether to issue the license within a *specified* and reasonable time period during which the status quo is maintained . . . .") (emphasis added). A severance is inappropriate if the remainder of the statute would still be unconstitutional. *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 935 (9th Cir. 2004).

**[14]** This conclusion does not require, as Déjà Vu contends, invalidation of the entire ordinance. The district court should have instead severed all provisions of § 6930(b) setting forth the permit requirement because they were not moored to a reasonable time limit, thereby leaving the ordinance's other provisions intact. Owners of adult establishments would have to comply with the substantive provisions of the ordinance, but would not need to secure a permit prior to operation unless and until the time limit defect is corrected. We therefore remand to the district court to correct its severance order consistent with this opinion. Each party should bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**