**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FANTASYLAND VIDEO, INC.,
           *Plaintiff-Appellant,*

v.

COUNTY OF SAN DIEGO,
           *Defendant-Appellee.*

No. 05-56026

D.C. No.
CV-02-01909-LAB

FANTASYLAND VIDEO, INC.,
           *Plaintiff-Appellant,*

and

TOLLIS, INC.; 1560 N. MAGNOLIA
AVENUE, LLC,
                    *Plaintiffs,*

v.

COUNTY OF SAN DIEGO,
           *Defendant-Appellee.*

No. 07-55033

D.C. No.
CV-02-01909-LAB

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted July 11, 2007
Submission Withdrawn August 7, 2007
Resubmitted October 5, 2007
Pasadena, California

Filed October 15, 2007

Before: Barry G. Silverman, William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

13987

Opinion by Judge Silverman

## COUNSEL

Clyde DeWitt, Weston, Garrou, DeWitt, & Walters, Los Angeles, California; Bradley J. Shafer, Shafer & Associates, Lansing, Michigan, for the plaintiff-appellant.

Thomas D. Bunton and John J. Sansone, County Counsel, San Diego, California, for the defendant-appellee.

Scott D. Bergthold, Chattanooga, Tennessee, for the amicus.

# OPINION

SILVERMAN, Circuit Judge:

In June 2002, the San Diego County Board of Supervisors adopted a comprehensive zoning ordinance to govern the operation of adult entertainment businesses within its jurisdiction, which covers the unincorporated portions of the county. The ordinance restricts the hours in which such businesses can operate, requires the removal of doors on peep show booths, and limits adult entertainment establishment to areas of the county zoned for industrial use. San Diego County's stated rationale for the ordinance was to combat negative secondary effects — crime, disorderly conduct, blight, noise, traffic, property value depreciation, and unsanitary behavior — that concentrate in and around adult businesses.

The two adult entertainment establishments presently operating in the unincorporated portions of San Diego County filed suit. (The City of San Diego and the other incorporated municipalities in the County are not governed by this ordinance.) In this appeal, the operator of one of the establishments, Fantasyland Video, Inc., appeals the district court's decision to uphold the ordinance's hours restriction and open-booth requirement. In its briefing to us, Fantasyland also contended that the hours of operation restriction violated both the First Amendment and the California Constitution. After oral argument, we certified to the California Supreme Court the question of what the proper standard of review is under the California Constitution. *Fantasyland Video, Inc. v. County of San Diego*, No. 05-56026, 2007 WL 2244146, at *1 (9th Cir. 2007). The California Supreme Court responded that hours-of-operation ordinances for adult businesses are subject to intermediate scrutiny. *Fantasyland Video, Inc. v. County of San Diego*, No. 05-56026, S155408 (Cal. Sept. 25, 2007) (order denying request to decide a question of California law). In the meantime, Fantasyland advised us of its decision to withdraw its claim that the hours of operation restriction vio-

lates the First Amendment, while retaining its claim under the California Constitution. The federal issue has thus been taken off the table regarding the hours restriction, but it remains a basis for the challenge to the open-booth requirement.

We affirm the district court's decision to uphold the ordinance's hours-of-operation restriction as surviving intermediate scrutiny under the California Constitution. Fantasyland fails to cast direct doubt on the County's rationale for the hours restriction. With respect to the open-booth requirement, we affirm the district court's ruling that the County's requirement of open booths at peep shows does not violate the First Amendment. Similar to the ordinances in other cases upholding open-booth requirements, the County's open-booth ordinance is supported by evidence of the nexus between closed booths and adverse secondary effects such as prostitution and pandering, matters in which the County has a substantial interest in regulating. Further, the ordinance is narrowly tailored. The content, number, and availability of peep shows are untouched; the ordinance deals only with the doors. We further reject Fantasyland's argument that the provision is invalid under Justice Kennedy's concurring opinion in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002). That concurrence is not applicable to open-booth requirements.

## I.   Background

In June 2002, citing to concerns about the surrounding neighborhood, the County Board of Supervisors adopted a comprehensive set of regulations and licensing procedures governing adult entertainment establishments within its jurisdiction. Among these regulations, the County prohibited any "door, curtain, or obstruction of any kind [to] be installed within the entrance to a peep show booth." San Diego County, Cal., Ordinance No. 9479, § 21.1816 (June 19, 2002). In addition, the County made it unlawful "for any owner, operator, manager or employee of an adult entertainment establishment

to remain open for business between the hours of 2:00 a.m. and 6:00 a.m. of any day excepting herefrom an adult hotel/ motel." San Diego County Ordinance No. 9479, § 21.1809. The ordinance took effect the following month.

Fantasyland operates an adult arcade, bookstore, novelty shop, and video store. It initiated federal and state constitutional challenges against the new ordinance, seeking declaratory and injunctive relief.

The district court granted summary judgment to the County, upholding the ordinance's requirement that adult establishments close between the hours of 2:00 a.m. and 6:00 a.m. and its restriction on doors at the entranceway to private peep show booths.[1] *See Fantasyland Video, Inc. v. County of San Diego*, 373 F. Supp. 2d 1094, 1106-1116 (S.D. Cal. 2005). Later, Fantasyland filed a Rule 60(b) motion for relief from judgment, which the district court denied.

These timely appeals followed.

## II.   Jurisdiction

The district court had subject matter jurisdiction over Fantasyland's constitutional claims under 28 U.S.C. §§ 1331, 1343(a), and over its state claims under 28 U.S.C. § 1367(a). We have jurisdiction under 28 U.S.C. § 1291.

## III.   Standard of Review

We review de novo the district court's grant of summary judgment and, viewing the evidence in a light most favorable to the non-moving party, determine whether there are any

---

[1]The other adult establishment in the unincorporated portion of the County, Déjà Vu, appealed the district court's judgment on other grounds not relevant to this appeal. *Tollis Inc. v. County of San Diego*, No. 05-56300 (9th Cir. Oct. 2, 2007).

genuine issues of material fact for trial. *See Gammoh v. City of La Habra*, 395 F.3d 1114, 1122 (9th Cir. 2005). We review the district court's denial of Fantasyland's Rule 60(b) motion for an abuse of discretion. *See United States v. Asarco, Inc.*, 430 F.3d 972, 978 (9th Cir. 2005).

## IV.   Discussion

The constitutionality of the challenged provisions is governed by the framework announced in *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986), and refined in the plurality opinion of *Alameda Books*, 535 U.S. 425. As recounted by *Center for Fair Public Policy v. Maricopa County*, 336 F.3d 1153 (9th Cir. 2003), the *Renton* inquiry proceeds in three steps: First, the ordinance cannot be a complete ban on the protected expression. *Id.* at 1159. Second, the ordinance must be content-neutral or, if content-based with respect to sexual and pornographic speech, its predominate concern must be the secondary effects of such speech in the community. *Id.* at 1159, 1161. Third, the regulation must pass intermediate scrutiny. It must serve a substantial government interest, be narrowly tailored to serve that interest, and allow for reasonable alternative avenues of communication. *Id.* at 1159.

With respect to this third step, the Supreme Court has adopted a specialized burden-shifting framework. When enacting a secondary effects ordinance, the municipality must rely on evidence that "demonstrate[s] a connection between the speech regulated . . . and the secondary effects that motivated the adoption of the ordinance." *Alameda Books*, 535 U.S. at 441 (plurality). Any material that is "reasonably believed to be relevant" can be used. *Id.* at 438 (quoting *Renton*, 475 U.S. at 51-52).

To avoid summary judgment, the plaintiffs must then "cast direct doubt on [the municipality's] rationale, either by demonstrating that the municipality's evidence does not support

its rationale or by furnishing evidence that disputes the municipality's factual findings." *Id*. at 438-39. Such evidence must be "actual and convincing." *Id*. at 439. If successful, "the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Id.*

## A.   Hours-of-Operation Restriction

**[1]** Fantasyland argues that the hours-of-operation restriction should be invalidated under the California Constitution based on *People v. Glaze*, 614 P.2d 291 (Cal. 1980), which struck down a similar hours-of-operation restriction under a test that was stricter than what the First Amendment requires. Indeed, as noted above, Fantasyland formally dropped its claim against this provision under the First Amendment and limited its challenge to the California Constitution. However, the California Supreme Court indicated in its response to our certified question that hours-of-operation restrictions are reviewed under intermediate scrutiny as applied by the United States Supreme Court. *See Fantasyland Video, Inc. v. County of San Diego*, No. 05-56026, S155408 (Cal. Sept. 25, 2007) (order denying request to decide a question of California law). That is the same standard identified in *Renton*, and the response to our certified question, including its citations to *Los Angeles Alliance for Survival v. City of Los Angeles*, 22 Cal. 4th 352, 357, 364 (2000); *City of National City v. Wiener*, 3 Cal. 4th 832, 841-43 (1992); and *People v. Superior Court (Lucero)*, 49 Cal. 3d 14, 26 (1989), suggests to us that the standard under the California Constitution is the same in this situation as that applied by the United States Supreme Court in *Renton*. Under *Renton*, Fantasyland failed to supply sufficient evidence to "cast direct doubt" on the County's asserted secondary-effects rationale. We conclude that the challenge under the California Constitution fails for the same reason.

**[2]** At the legislative stage, the County relied on studies and reports, reported court decisions, and anecdotal testimony to establish a correlation between adult establishments and negative secondary effects.[2] Based on this evidence, the County could reasonably infer that restricting the hours of operations for adult businesses would have the purpose and effect of reducing crime, disorderly conduct, traffic, and noise during late-night hours. Fantasyland's attempt to cast doubt on the County's conclusions fails as a matter of law because its expert, Daniel Linz, Ph.D., a professor in the Department of Communication's Law and Society Program at the University of California Santa Barbara, did not rebut the County's evidence with regard to noise and traffic. The evidence presented by Dr. Linz addressed only late night crime and property values. The County considered these factors, but its purported rationale for requiring adult businesses to close from 2:00am to 6:00am also included combating increased noise and traffic. Fantasyland's failure to address these considerations is fatal under the second step of the *Renton* intermediate scrutiny analysis. *See Alameda Books, Inc.*, 535 U.S. at 438-39. With regard to noise and traffic, Fantasyland failed as a matter of law "to cast direct doubt on [the County's] rationale . . . by demonstrating that the [County's] evidence does not support its rationale or by furnishing evidence that disputes [its] factual findings." *Id.* Thus, the County's hours-of-operation ordinance withstands intermediate scrutiny and Fantasyland's challenge under the California Constitution fails.

## B.    Open-Booth Requirement

Fantasyland argues that San Diego County Ordinance No. 9479 is invalid under several facets of *Renton* intermediate scrutiny and under Justice Kennedy's concurring opinion in *Alameda Books*, 535 U.S. at 444-53.[3] Fantasyland alleged that

---

[2]Fantasyland conceded that this evidence satisfied the County's initial evidentiary burden. *See Fantasyland*, 373 F. Supp. 2d at 1107.

[3]Justice Kennedy did not join the plurality opinion in *Alameda Books*. As "his concurrence is the narrowest opinion joining in the judgment of the Court," it is the controlling opinion. *Ctr. for Fair Pub. Policy*, 336 F.3d at 1161.

the ordinance violated both the First Amendment and the California Constitution.

We have previously upheld open-booth requirements similar to the one adopted by the County. *Spokane Arcade, Inc. v. City of Spokane*, 75 F.3d 663 (9th Cir. 1996)*; Ellwest Stereo Theaters, Inc. v. Wenner*, 681 F.2d 1243 (9th Cir. 1982). In both *Spokane Arcade* and *Ellwest* we found that the open-booth requirements were narrowly tailored to a substantial interest. *See Spokane Arcade*, 75 F.3d at 666-67; *Ellwest*, 681 F.2d at 1246-47. Other circuits have also upheld such ordinances, concluding that the alternatives would less effectively serve the municipality's substantial interest in deterring sexual activity in peep-show booths. *See Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1003-04 (7th Cir. 2002); *Mitchell v. Comm'n on Adult Entm't Establishments*, 10 F.3d 123, 141-44 (3d Cir. 1993); *Bamon Corp. v. City of Dayton*, 923 F.2d 470, 473-74 (6th Cir. 1991); *Doe v. City of Minneapolis*, 898 F.2d 612, 617-19 (8th Cir. 1990); *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1169-70 (4th Cir. 1986).

### 1.    *Renton* Analysis

#### a.    Substantial interest unrelated to expression

Fantasyland first contends that the County has no substantial governmental interest under *Renton* in preventing private sexual conduct within an enclosed booth. We disagree.

[3] The conduct at issue is not private at all. It is occurring at a retail establishment. The "curtailing [of] public sexual criminal offenses" is a significant state interest. *Ellwest*, 681 F.2d at 1246. The County's objective in reducing instances of prostitution and solicitation at businesses that operate peep show booths is valid. Furthermore, the County has a substantial interest in preventing certain private sexual acts occurring within peep show booths, notably the use of so-called "glory

holes"—the placement of a peep show patron's genitals through holes or gaps in the wall partition between the booths. Such activities constitute lewd conduct under California Penal Code § 647(a). *See People v. Rylaarsdam*, 181 Cal. Rptr. 723, 727-28 (App. Dep't Super. Ct. 1982).

**[4]** Moreover, there is no requirement under *Renton* that the asserted secondary effects be criminal. *See, e.g.*, *Ctr. for Fair Pub. Policy*, 336 F.3d at 1166 (reducing late night noise and traffic). One may therefore accept Fantasyland's proposition that masturbation in a fully-enclosed booth is legal in California and still find a substantial governmental interest in curtailing the activity. Rampant masturbation at a commercial property open to the public may rationally trigger sanitation concerns and impair the right of other patrons to view their materials or read the accompanying articles in peace. *See Deluxe Theater & Bookstore, Inc. v. City of San Diego*, 221 Cal. Rptr. 100, 102 (Ct. App. 1985) (finding that city had an interest in regulating peep show booths due to the potential for unlawful, offensive, and unsanitary behavior).

#### b.    Nexus between the speech and secondary effects

Fantasyland next suggests that the County failed to show a nexus between the peep show booths and its interest in curtailing sexual activity.

**[5]** When enacting the open-booth requirement, the County Board of Supervisors referenced anecdotal reports of sexual activity occurring within peep show booths of other jurisdictions. The County also incorporated the findings from *Spokane Arcade*, 75 F.3d at 664-65, and *Deluxe Theater & Bookstore,* 221 Cal. Rptr. at 102, where municipalities enacted open-booth ordinances in response to drug use and sexual conduct by booth patrons. Reliance on the experiences of other jurisdictions is sufficient to satisfy the County's minimal burden at the legislative stage. *See Renton*, 475 U.S. at 50-52.

To avoid summary judgment, Fantasyland must produce contrary evidence that casts direct doubt on the County's conclusions. It offered the lone declaration of John M. Goldenring, a medical doctor and public health expert. In his declaration, Dr. Goldenring stated that infection from sexually transmitted diseases could only occur through sexual contact, and not through seminal fluid left on the surfaces of the peep show booths.

[6] The district court correctly found that Dr. Goldenring's declaration was insufficient as a matter of law. *See Fantasyland*, 373 F. Supp. 2d at 1114-15. The County did not adopt the open-booth requirement to curtail the transmission of disease through bodily fluids left in the booths. Rather, it enacted the requirement to reduce the instances of sexual activity, solicitation, and pandering occurring within those spaces. Nothing in Dr. Goldenring's declaration challenges the County's evidentiary conclusions regarding the prevalence of those activities.[4]

#### c. Narrowly tailored

Finally, Fantasyland suggests that there are far less drastic means of accomplishing the County's stated objective. They include reducing the size of the booth, requiring that there be a space between the floor and the bottom of the door to allow verification that only one person is in the booth, and monitoring the spaces around the booths.

[7] The issue is not whether Fantasyland can posit less restrictive alternatives. The narrow tailoring requirement "is

---

[4]Fantasyland also references the declaration of its vice president, who speculated that the open-booth requirement would facilitate contact between customers "culminating in relatively anonymous sexual encounters *after they leave* the business" (emphasis added). This declaration does nothing to cast doubt on the County's rationale to curb sexual activity occurring *inside* the business.

satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation' " and "the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 799-800 (1989) (citation omitted, omission in original).

**[8]** Fantasyland has not shown that the open-booth requirement is substantially broader than necessary to curtail the targeted sexual activity. It did present a declaration that peep show patronage generally declines by 60% after removal of the doors. However, such decline in business, standing alone, is not determinative.

**[9]** Fantasyland has not produced any evidence showing that the decline was unconnected to the County's asserted secondary effects — *i.e.*, that the 60% were there just to watch the movie. *See Ellwest*, 681 F.2d at 1247 (finding nothing in the record to substantiate plaintiff's "suggestion that, because of the open booth requirement, potential viewers forgo their right to watch films of their choice").

**[10]** Furthermore, the ordinance does not restrict protected speech occurring in the booths. The ordinance does not in any way limit the content of the videos, the number of booths available for viewing the videos, or the availability of the videos. The videos are as available as ever.

### 2. Justice Kennedy's *Alameda Books* Concurrence

**[11]** To justify a content-based zoning ordinance that restricts sexual and pornographic speech, Justice Kennedy wrote in *Alameda Books* that "a city must advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects, while leaving the quantity and accessibility of speech substantially intact." 535 U.S. at 449. The city must have some basis to think that its ordinance will

suppress secondary effects, but not also the speech associated with those effects. *Id.* at 449-50.

**[12]** We have said that Justice Kennedy's concurrence did nothing "to precipitate a sea change in this particular corner of First Amendment law." *Ctr. for Fair Pub. Policy*, 336 F.3d at 1162. Furthermore, we determined that his proportionality language was designed for "a classic erogenous zoning ordinance whereby the city was restricting certain land uses," and that it was never intended to apply to an hours-of-operation ordinance. *Id.* at 1163 (noting that the proportionality analysis, if applied to a time restriction, would invalidate all such laws).

**[13]** We now hold that Justice Kennedy's concurrence is also inapplicable to an open-booth requirement. Under the County's rationale, the patron watching a private peep show often seeks to masturbate, solicit sexual acts, or engage in sexual acts while in the booth. Any regulation that deters these activities will necessarily make the forum for the speech less attractive, but only because the speech and sexual acts originate with the same person and occur at the same time. The overall quantity of the protected expression must be reduced, but only because the patron is chilled from also contemporaneously engaging in the unprotected behavior. Justice Kennedy's proportionality language was not designed for situations where the protected speech and the unprotected conduct merge in the same forum.

Fantasyland is of course entitled to cast doubt on the County's reasoning. It could attempt to prove an absence of the asserted unlawful or illicit sexual activity in the booths, thereby defeating the County's inference of correlation between the speech at issue and the secondary effects. Alternatively, Fantasyland could produce evidence that the open-booth requirement does little to deter the sexual activity while, at the same time, substantially chills the protected speech. It has done neither here.

**[14]** The County's open-booth requirement is valid under prevailing Ninth Circuit authority and nothing in *Alameda Books* undermines that conclusion. As a result, the district court correctly granted summary judgment to the County on this claim.

## C.   Rule 60(b) Appeal

On June 16, 2006, Fantasyland filed a motion for relief from the district court's judgment pursuant to Federal Rule of Civil Procedure 60(b). The motion referenced a declaration by Fantasyland's vice president stating that peep show business had declined by 91% since Fantasyland began complying with the County's open-booth restriction.

**[15]** There was no abuse of discretion in the district court's decision to deny the motion. The declaration is not "newly discovered evidence" under Rule 60(b)(2) because it discusses evidence that was not in existence at the time of the judgment. *See Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981). Further, the district court's judgment did not have any prospective application, thereby precluding relief under Rule 60(b)(5). *See Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995).

**[16]** Finally, Rule 60(b)(6)'s catch-all provision is unavailable. This rule "has been used sparingly as an equitable remedy to prevent manifest injustice" and "is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). That standard has not been satisfied.

**AFFIRMED.**