GOULD, Circuit Judge,
concurring in judgment:
I agree that the City of Redondo Beach did not narrowly tailor its ordinance, nor meet its burden to show that the Ordinance leaves open ample alternative channels of communication for day laborers. See Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). If the City had designated a permissible area for day laborer solicitation, in a.convenient location for day laborers and potential employers alike, I would hold that the ordinance was a reasonable time, place, and manner restriction. We err when we make it so hard for municipalities to satisfy the test for reasonable restraints on time, place, and manner of speech that these municipalities cannot achieve important public goals like traffic safety while preserving speech. But because the day laborers here were shut out of the City of Redondo Beach, and left without any practical way to reach their intended audience with a message of job solicitation, see City of Ladue v. Gilleo, 512 U.S. 43, 56-58, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994), and because the City’s goals could have been effectively accomplished with a narrower ordinance that did not cover all streets and that recognized permissible solicitation locations, I concur in the judgment.
M. SMITH, Circuit Judge, with whom THOMAS, Circuit Judge, joins, and with whom GRABER, Circuit Judge, joins as to Part I, specially concurring:
I agree with my colleagues in the majority that the Ordinance is not narrowly tailored. I write separately to set forth two additional reasons why I believe the Ordinance should be declared facially invalid: it is a content-based restriction on speech that does not withstand strict scrutiny, and, even if it were content neutral, it does not leave open ample alternative channels of communication.
I. CONTENT NEUTRALITY
There are two methods for determining whether a statute is content neutral or content based. First, “a content-based purpose may be sufficient in certain circumstances to show that a regulation is content based.” Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). Second, “laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.” Id. at 643, 114 S.Ct. 2445. Because the' second line of inquiry clearly reveals a content-based law, I need not consider whether the City harbored a content-based purpose.
*952 The governing test is straightforward: “whether a statute is content neutral or content based is something that can be determined on the face of it; if the statute describes speech by content then it is content based.” City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 448, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (Kennedy, J., concurring in the judgment); see also Holder v. Humanitarian Law Project, — U.S. -, 130 S.Ct. 2705, 2723-24, 177 L.Ed.2d 355 (2010) (deeming law to be content based because the validity of plaintiffs’ speech “depends on what they say”). “Deciding whether a particular regulation is content based or content neutral is not always a simple task,” Turner Broad. Sys., 512 U.S. at 642, 114 S.Ct. 2445, but the Supreme Court’s case law is instructive. Some examples of content-based restrictions include laws that allow labor-related picketing but prohibit all other forms of picketing, Carey v. Brown, 447 U.S. 455, 460-61, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); Police Dept. of Chi. v. Mosley, 408 U.S. 92, 95-96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); a rule that bars utilities from “ ‘discussing] political matters’ ” in their communications with customers, Consol. Edison Co. of N.Y. v. Pub. Serv. Comm’n, 447 U.S. 530, 532, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980) (citation omitted); an ordinance that allows newsracks promoting newspapers but bans newsracks promoting advertising circulars, City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993); and a law that “taxes general interest magazines, but exempts newspapers and religious, professional, trade, and sports journals,” Ark. Writers’ Project, Inc. v. Ragland, 481 U.S. 221, 223, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). In contrast, examples of content-neutral restrictions include a law regulating all picketing regardless of its content or subject matter, Frisby v. Schultz, 487 U.S. 474, 477, 481-82, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); an ordinance banning “the posting of [all] signs on public property,” Members of the City Council of L.A. v. Taxpayers for Vincent (Taxpayers for Vincent), 466 U.S. 789, 791, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); and, most relevantly, a law regulating all “sales, distribution, and fund solicitation operations” at a state fair, Heffron v. Int’l Soc’y for Krishna Consciousness, Inc. (Heffron), 452 U.S. 640, 644, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).
R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), provides useful guidance regarding facially content-based laws. A city ordinance banned cross burning with the intent to intimidate “on the basis of race, color, creed, religion or gender.” Id. at 391, 112 S.Ct. 2538 (internal quotation marks omitted). The Court explained that, although “fighting words” are generally subject to prohibition, the government must justify (under strict scrutiny) any content- or subject matter-based distinction among different types of fighting words. Id. at 384-85, 112 S.Ct. 2538. Regarding the cross-burning ordinance before it, the Court wrote: “Displays containing abusive invective, no matter how vicious or severe, are permissible unless they are addressed to one of the specified disfavored topics” — i.e., “ ‘race, color, creed, religion or gender.’” Id. at 391, 112 S.Ct. 2538. In contrast, “[t]hose who wish to use ‘fighting words’ in connection with other ideas — to express hostility, for example, on the basis of political affiliation, union membership, or homosexuality — are not.” Id. In other words, a law is content based even if it does not promote or prohibit a particular viewpoint. As the Court explained, all forms of “content discrimination raise[] the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace.” Id. at 387, 112 S.Ct. 2538 (internal quotation marks omitted). Merely restricting *953 speech on a particular topic triggers strict scrutiny.
Having considered these background principles, I now turn to the most analogous example of a content-based law, which appears in Burson v. Freeman, 504 U.S. 191, 193-94, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992). The statute at issue in Burson prohibited soliciting votes near polling places on election day. Id. Although the Court was divided over how to resolve the case, the Justices unanimously agreed that the law was content based. Id. at 197, 112 S.Ct. 1846 (plurality opinion); id. at 215, 112 S.Ct. 1846 (Sealia, J., concurring in the judgment); id. at 224, 112 S.Ct. 1846 (Stevens, J., dissenting). As explained by the plurality opinion,
Whether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign. The statute does not reach other categories of speech, such as commercial solicitation, distribution, and display. This Court has held that the First Amendment’s hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic.
Id. at 197, 112 S.Ct. 1846 (plurality opinion).
In light of this authority, the Redondo Beach Ordinance is content based on its face. It is essentially the inverse of the law reviewed in Burson: it prohibits certain subject matters — any solicitation related to “employment, business, or contributions” — and allows all other solicitation (such as political solicitation) to continue unabated. Under the Ordinance, individuals may not stand on Redondo Beach streets or sidewalks and communicate with motorists to “[s]olicit[ ] alms and contributions,” United States v. Kokinda, 497 U.S. 720, 724, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (internal quotation marks omitted); solicit clients for their business, see Eden-field v. Fane, 507 U.S. 761, 766, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993); or solicit contributions to a political fund, see Fed. Election Comm’n v. Nat’l Right to Work Comm., 459 U.S. 197, 201-02, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982). They may, however, stand on those same streets or sidewalks and communicate with motorists to solicit votes, see Burson, 504 U.S. at 193-94, 112 S.Ct. 1846; solicit support for pending legislation, see E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 138, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); solicit membership in a church, labor union, or other organization, cf. Thomas v. Collins, 323 U.S. 516, 537, 65 S.Ct. 315, 89 L.Ed. 430 (1945); or, as the Plaintiffs and Amici point out, solicit moral support (as occurs at labor pickets and political rallies, for example).
Thus, the Ordinance is facially content based: some solicitation speech is permitted and other solicitation speech is restricted. Individuals are subject to the Ordinance “depend[ing] on what'they say.” Humanitarian Law Project, 130 S.Ct. at 2723-24. If they request “employment, business, or contributions” they are subject to criminal sanction, but if they request anything else, they are unaffected.
I recognize that the Supreme Court’s decision in Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), could be read to cast some doubt upon this conclusion. Hill addressed a “Colorado statute that regulate[d] speech-related conduct within 100 feet of the entrance to any health care facility.” Id. at 707, 120 S.Ct. 2480. The statute “ma[de] it unlawful within the regulated areas for any person to ‘knowingly approach’ within eight feet of another person, without that person’s consent, ‘for the purpose of passing a leaflet or handbill to, displaying a sign to, *954 or engaging in oral protest, education, or counseling with such other person.’ ” Id. (quoting Colo.Rev.Stat. § 18-9-122(8) (1999)). The Court first stated three reasons why the statute was content neutral under Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989):
First, it is not a “regulation of speech.” Rather, it is a regulation of the places where some speech may occur. Second, it was not adopted “because of disagreement with the message it conveys.” This conclusion is supported not just by the Colorado courts’ interpretation of legislative history, but more importantly by the State Supreme Court’s unequivocal holding that the statute’s “restrictions apply equally to all demonstrators, regardless of viewpoint, and the statutory language makes no reference to the content of the speech.” Third, the State’s interests in protecting access and privacy [at medical facilities], and providing the police with clear guidelines, are unrelated to the content of the demonstrators’ speech. As we have repeatedly explained, government regulation of expressive activity is “content neutral” if it is justified without reference to the content of regulated speech.
Hill, 530 U.S. at 719-20, 120 S.Ct. 2480 (footnote omitted).
Were this the entirety of the Court’s reasoning, I would be hard pressed to conclude that the Redondo Beach Ordinance is content based. The Court’s three-part analysis focused almost entirely on questions of legislative motivations and viewpoint neutrality. But the Court did not use this three-part test as the exclusive method of determining content neutrality. Instead, it reaffirmed Carey v. Brown’s core holding that the “prohibition on discussion of particular topics ” and the “Regulation of the subject matter of messages, though not as obnoxious as viewpoint-based regulation, [are] also ... objectionable form[s] of content-based regulation.” Hill, 530 U.S. at 722-23, 120 S.Ct. 2480 (emphases added). The Court then concluded that the Colorado statute restricted “an extremely broad category of communications,” but not any particular “subject matter[s],” id. at 723, 120 S.Ct. 2480, because “[i]t applie[d] to all ‘protest,’ to all ‘counseling,’ and to all demonstrators,” id. at 725, 120 S.Ct. 2480.
In a particularly relevant observation, the Court noted that the Colorado “statute applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists, and missionaries.” Id. at 723, 120 S.Ct. 2480. That statement is not true with respect to the Redondo Beach Ordinance. On Redondo Beach streets and sidewalks, “used car salesmen” and “fundraisers” are unable to practice their respective crafts of selling and fundraising, whereas “missionaries,” “animal rights activists,” and “environmentalists,” are free to solicit religious conversion, political assistance, and moral support. In other words, the Ordinance does not simply regulate “extremely broad categories] of communications,” id. at 723, 120 S.Ct. 2480, such as all requests and solicitations (as was the case in Heffron, 452 U.S. at 644, 101 S.Ct. 2559). Rather, the Ordinance regulates particular “subject matter[s]” within those broad categories. Hill, 530 U.S. at 723, 120 S.Ct. 2480. Thus Hill, rather than supporting the City’s argument that the Ordinance is content neutral, cuts in favor of my conclusion to the contrary.
In sum, I would conclude that the Ordinance is a content-based, rather than content-neutral, restriction on speech. It restricts discussion of certain subject matters — namely, speech that requests employment, business, and contributions — while allowing free discussion about other subject matters. Under Bur- *955 son v. Freeman, R.A.V. v. City of St. Paul, Carey v. Broum, Chicago v. Mosley, Consolidated Edison, City of Cincinnati v. Discovery Network, and Arkansas Writers’ Project, the Ordinance is a content-based restriction on speech.
“Content-based regulations are presumptively invalid,” R.A.V., 505 U.S. at 382, 112 S.Ct. 2538, and may be upheld only if they satisfy “the most exacting scrutiny,” Turner Broad. Sys., 512 U.S. at 642, 114 S.Ct. 2445. Such regulations “must be narrowly tailored to promote a compelling Government interest,” and “[i]f a less restrictive alternative would serve the Government’s purpose, the legislature must use that alternative.” United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Because the Ordinance is not narrowly tailored under the intermediate-scrutiny “time, place, and manner” test discussed in the majority opinion, it fails to satisfy strict scrutiny.
II. ALTERNATIVE CHANNELS OF COMMUNICATION
In addition, even assuming (as the majority opinion does) that the Ordinance is content neutral, I would conclude the Ordinance does not leave open ample alternative channels for the Plaintiffs to engage in their protected speech. See Ward, 491 U.S. at 791, 109 S.Ct. 2746 (“[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions ... leave open ample alternative channels for communication of the information.” (internal quotation marks omitted)). The City bears the burden of making this showing. Lim v. City of Long Beach, 217 F.3d 1050, 1054 (9th Cir.2000) (collecting cases).
The Supreme Court’s case law provides guidance on how to apply this standard. As explained in City of Ladue v. Gilleo, 512 U.S. 43, 56-57, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994), and Linmark Associates, Inc. v. Township of Willingboro, 431 U.S. 85, 93, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), the proffered alternatives must allow the speaker to reach his or her intended audience, in an equally effective manner as the prohibited speech, and without incurring meaningfully greater costs in time or money. In Linmark Associates, the Court overturned a ban on “for sale” signs in residential neighborhoods, explaining:
Although in theory sellers remain free to employ a number of different alternatives, in practice realty is not marketed through leaflets, sound trucks, demonstrations, or the like. The options to which sellers realistically are relegated — primarily newspaper advertising and listing with real estate agents — involve more cost and less autonomy than “For Sale” signs, are less likely to reach persons not deliberately seeking sales information, and may be less effective media for communicating the message that is conveyed by a “For Sale” sign in front of the house to be sold. The alternatives, then, are far from satisfactory.
431 U.S. at 93, 97 S.Ct. 1614 (citations omitted). Similarly, in City of Ladue, the Court overturned an ordinance that barred residents from posting any type of sign on their property (with some exceptions that were not relevant to the Court’s analysis). The Court emphasized that the prohibited speech “may have no practical substitute,” particularly “for persons of modest means.” 512 U.S. at 57, 114 S.Ct. 2038. The Court rejected alternatives such as “taking out a newspaper advertisement, handing out leaflets on the street, or standing in front of one’s house with a handheld sign,” because “the added costs in money or time” of those alternatives “make the difference between participating and not participating in some public debate.” Id. The Court further observed that the speakers’ intended audience— *956 their neighbors — “could not be reached nearly as well by other means.” Id.
The Court has engaged in a similar mode of analysis dating back to at least the 1940s. See Martin v. City of Struthers, 319 U.S. 141, 146, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) (“Door to door distribution of circulars is essential to the poorly financed causes of little people.”); Milk Wagon Drivers Union of Chi, Local 75S v. Meadowmoor Dairies, Inc., 312 U.S. 287, 293, 61 S.Ct. 552, 85 L.Ed. 836 (1941) (“Peaceful picketing is the workingman’s means of communication.”). More recently, the Court has acknowledged its “special solicitude for forms of expression that are much less expensive than feasible alternatives.” Taxpayers for Vincent, 466 U.S. at 812 n. 30, 104 S.Ct. 2118.
That being said, the Court has not always rejected a defendant’s proposed alternative means of communication. In Heffron, the Court was persuaded that solicitors were free to engage in their protected speech anywhere outside the 125-acre state fairgrounds, and were also free to rent a booth inside the fairgrounds for the same purpose. 452 U.S. at 654-55, 101 S.Ct. 2559. In Taxpayers for Vincent, the Court upheld a ban on placing posters on public property because there was no evidence “that the posting of political posters on public property is a uniquely valuable or important mode of communication.” 466 U.S. at 812, 104 S.Ct. 2118. Finally, in Frisby v. Schultz, the Court upheld a ban on picketing in front of individual residences because protestors could still “enter such neighborhoods, alone or in groups, even marching,” “go door-to-door to proselytize their views,” “distribute literature” door-to-door “or through the mails,” and “contact residents by telephone” — any of which would reasonably allow the underlying message to be disseminated to the intended audience. 487 U.S. at 484, 108 S.Ct. 2495 (internal quotation marks omitted).
Here, however, the City fails to identify adequate alternatives, making this case more like Linmark Associates and City of Ladue than Heffron, Taxpayers for Vincent, and Frisby. The City first relies on the alternatives upheld in ACORN: “solicitation on the sidewalk from pedestrians, canvassing door-to-door, telephone campaigns, or direct mail.” ACORN v. City of Phoenix, 798 F.2d 1260, 1271 (9th Cir.1986). However, the City has not actually met its burden of submitting evidence to establish that these alternatives are effective for day laborers. Although our three-judge panel may have been bound to accept these alternatives as a matter of stare decisis, our en banc panel is not so bound. I find no evidence in the record that day laborers could effectively employ the alternatives listed in ACORN. Likewise, there is no evidence to support the Dissent’s claim that “many” day laborers advertise in the newspaper and on Craigslist. Dissent at 967. Day laborers simply cannot effectively communicate their intended message (“I am available to work today”) to their intended audience (contractors, homeowners, and other potential employers) by soliciting pedestrians, canvassing door-to-door, or mailing and calling individuals and businesses directly. See Linmark Assocs., 431 U.S. at 93, 97 S.Ct. 1614. The proposed alternatives impose obvious “added costs in money [and] time” as compared to solicitation on public streets, which renders these options inadequate as a matter of law. City of Ladue, 512 U.S. at 57, 114 S.Ct. 2038.
The City next argues that the day laborers could simply congregate in nearby private parking lots. But as the Plaintiffs correctly point out, it is impermissible for the City to “force speakers out of public fora and onto private property.” The Supreme Court has never allowed privately owned venues to substitute for public fora. See Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 556, 95 S.Ct. 1239, 43 L.Ed.2d *957 448 (1975) (“Whether petitioner might have used some other, privately owned, theater in the city for the production is of no consequence.”); see also ACLU of Nev. v. City of Las Vegas, 466 F.3d 784, 791 (9th Cir.2006) (“There is a growing nationwide trend toward the privatization of public property____If this trend of privatization continues — and we have no reason to doubt that it will — citizens will find it increasingly difficult to exercise their First Amendment rights to free speech, as the fora where expressive activities are protected dwindle.” (internal quotation marks omitted)).
Finally, the City argues that an adequate alternative would be for day laborers to congregate at one of the six “day laborer centers in Southern California” listed on Plaintiff NDLON’s website. However, none of the centers is located anywhere near Redondo Beach. (The Dissent suggests that these “centers are easy to find” and that employers face “a minimum of inconvenience” when traveling there. Dissent at 967. These assertions find no support in the record and, indeed, seem to contradict the obvious reality that traveling in Southern California is rarely, if ever, minimally inconvenient.) Thus, the City’s proposed “alternative” fails to allow the Plaintiffs to reach their intended audience: residents of Redondo Beach and neighboring areas. See Linmark Assocs., 431 U.S. at 93, 97 S.Ct. 1614. “[0]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.” Schneider v. New Jersey, 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939); see also Schad v. Borough of Mount Ephraim, 452 U.S. 61, 76, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (rejecting citywide ban on live entertainment because “there is no evidence in this record to support the proposition that the kind of entertainment appellants wish to provide is available in reasonably nearby areas”).
Accordingly, in addition to concluding that the Ordinance is a content-based restriction that does not satisfy strict scrutiny, I would also conclude that the City has failed to meet its burden of showing that there are ample alternative channels available for the Plaintiffs to engage in protected solicitation.